**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| SHONDRA L. HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:26-cv-02002-TLP-tmp |
| v. | ) | |
| | ) | |
| TENNESSEE DEPARTMENT OF HUMAN SERVICES, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

---

**ORDER ADOPTING REPORT AND RECOMMENDATION TO DENY PRELIMINARY INJUNCTION**

---

Pro se Plaintiff Shondra L. Hampton sued the Tennessee Department of Human Services ("DHS"), some state employees in their official capacities, and unknown defendants in January 2026, alleging civil right violations under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff also moved for a Temporary Restraining Order ("TRO"). (ECF No. 4.) In that Motion, Plaintiff asserted that "[i]mminent harm includes forced closure of a licensed childcare facility." (ECF No. 4.) Plaintiff also asserted she was likely to be successful on the merits because of "retaliatory enforcement and lack of due process," and that the "public interest favors maintaining childcare continuity." (*Id.*)

On July 22, 2026, the Court referred the Motion to Chief Magistrate Judge Tu M. Pham for determination under 28 U.S.C. § 636(b)(1). (ECF No. 17.) Judge Pham issued a Report and Recommendation ("R&R") in August 2025 recommending that the Court deny the Motion for a Preliminary Injunction. (ECF No. 25 at PageID 155.) His R&R notified the parties that they had fourteen days to object to the proposed findings and recommendations and that they could

respond to the other party's objections after fourteen days of being served with a copy. (*Id.*) Plaintiff objected and Defendant responded to Plaintiff's objections. (ECF Nos. 29, 30.)

For the reasons below, this Court **ADOPTS** the R&R.

## BACKGROUND AND THE R&R

Plaintiff sued here in January 2026. (ECF No. 1.) Judge Pham accurately described Plaintiff's Complaint. (ECF No. 25 at PageID 141–42.) Plaintiff operates Prestigious Learning Academy #1 ("PLA"), a childcare facility in Memphis, Tennessee. (ECF No. 1 at PageID 1–2.) Plaintiff claims that "she engaged in protected activity, including reporting misconduct, opposing unlawful practices, and asserting her rights under state law." (*Id.* at PageID 2.) Plaintiff asserts that after she engaged in protected activity, DHS initiated retaliatory audits of her participation in the Child Care Certificate Program ("CCCP"). (*Id.* at PageID 2.) CCCP is a federal grant program that reimburses childcare providers who offer services to low-income families. (ECF No. 20 at PageID 81.)

Plaintiff alleges that Defendants' retaliation violated her First Amendment rights to engage in protected speech and petitioning activity. (*Id.* at PageID 3.) And she asserts that Defendants violated her Fourteenth Amendment right to procedural due process because she "has a protected property interest in her childcare license, CCCP participation, and ongoing business operations." (*Id.*) Plaintiff also brings a claim under the Fourteenth Amendment's Equal Protection Clause, alleging that "Defendants treated Plaintiff differently from similarly situated childcare providers without a rational basis and for retaliatory reasons." (*Id.*) Plaintiff claims that without injunctive relief, she "will suffer irreparable harm, including loss of business, reputation, goodwill, staff, and disruption to children and families that cannot be remedied by money damages." (*Id.*)

Judge Pham construed the Motion for a TRO as a Motion for a Preliminary Injunction and set an evidentiary hearing. (ECF No. 12 at PageID 69–70.) Defendant DHS then opposed the Motion. (ECF No. 20.) DHS attached an Affidavit from Gwen Laaser, the Director of Child Care Services at the Division of Child Care and Community Services. (ECF No. 20-1.) Ms. Laaser asserts that DHS received a complaint in September 2025 that PLA was claiming too many children for CCCP. (*Id.* at PageID 93.) She claims that DHS auditors arrived at PLA on October 2, 2025, "to investigate the complaint regarding possible overpayments of child care certificate programs," but Plaintiff refused entry to the building and DHS's record requests. (*Id.*)

Ms. Laaser adds that DHS sent a termination letter for PLA's participation in CCCP on December 8, 2025, based on Plaintiff's refusal, and the termination letter became effective on January 8, 2026. (*Id.* at PageID 93–94.) Ms. Laaser also claims that DHS "does not have any legal enforcement actions with respect to the child care license of PLA" and that PLA's child care license remains in good standing. (*Id.*) She does, however, assert that DHS auditors concluded that Plaintiff may be liable for $86,839.18 in overpayments for claiming too many children under the CCCP. (*Id.* at PageID 94.)

DHS also attached the CCCP contract between it and Plaintiff, the monitoring report of PLA completed by DHS's Division of Audit Services on December 5, 2025, and the letter of termination from December 8, 2025. (ECF Nos. 20-3, 20-4, 20-5.) The contract contains a clause agreeing to compliance with on-site audit reviews at any time. (ECF No. 20-3 at PageID 100.) The contract also contains a "Termination for Convenience" clause, which allows DHS to terminate the contract "without cause and for any reason," provided DHS gives thirty days' notice of termination to Plaintiff. (*Id.* at PageID 104.)

Judge Pham conducted the evidentiary hearing on August 5, 2026. (ECF No. 22.) At that hearing, Plaintiff presented an audio recording of her conversation with DHS auditor Teri Nelson from October 1, 2025. (ECF No. 25 at 146.) She also played a second recording from October 2 in which Plaintiff told Nelson that she could not do the audit that day because of her nephew's graduation event. (*Id.*) Plaintiff also produced a printout of a Facebook post she made on September 18, 2025, calling for an investigation into the Child Care Program in Memphis for corruption. (*Id.*)

Another of Plaintiff's exhibits was an email she sent to Nelson on October 6, 2026. (*Id.*) In that email, Plaintiff accused DHS of "clear retaliation and a continuation of a long-standing pattern of harassment and reprisal that [she had] endured for more that 17 years from Mrs. LaRosa Parks and her professional circle inside [DHS]." (*Id.* at PageID 147) (quoting Injunction H'rg, Ex. 3.) Plaintiff then wrote, "Accordingly, I hereby notify you that: I will not participate in or produce records for any audit conducted by you or any DHS employee with a personal or sorority affiliation with Ms. Parks at all. This is harassment. All future audit requests must be made in writing through DHS Legal Counsel or the Office of Inspector General . . . ." (*Id.*) (quoting Injunction H'rg, Ex. 3.) Plaintiff lastly testified to the alleged irreparable harm she would suffer without a preliminary injunction, such as the fact that she was $13,000 in debt, that her two employees would likely lose their jobs, and that families have told her that they need her daycare center. (*Id.* at 147–48.)

In setting forth his reasons why Plaintiff's Motion for a Preliminary Injunction should be denied, Judge Pham applied the four-pronged standard for these motions:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to other; and (4) whether the public interest would be served by issuing the injunction.

(*Id.* at PageID 149) (citing *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Judge Pham found that that the first factor, the likelihood of success on the merits, "weighs heavily against issuing a preliminary injunction" because Plaintiff has not shown enough evidence that links DHS's audit to her Facebook post. (*Id.* at PageID 150.) Judge Pham reasoned that, even though the audit came shortly after the Facebook post, the evidence shows that there could have been other reasons for the audit, including the September 2025 complaint that PLA was claiming too many children. (*Id.* at PageID 150.)

And Judge Pham concluded that the evidence shows that Plaintiff's termination resulted from her refusal to submit to DHS's audit. (*Id.*) Judge Pham also found that Plaintiff's procedural due process claim under the Fourteenth Amendment was unlikely to succeed. Judge Pham reasoned that Plaintiff still had her childcare license and she did not have a property interest in CCCP because the "Termination for Convenience" clause in the CCCP contract allowed DHS to terminate the contract for any reason. (*Id.* at PageID 152.) Judge Pham further concluded that Plaintiff would have no more success on her Equal Protection claim because, even if she could identify comparator childcare providers, that class does not implicate fundamental rights and DHS had a rational basis to conduct the audit. (*Id.* at PageID 153.)

Judge Pham found that the second factor, whether failure to issue an injunction would cause irreparable harm to Plaintiff, weighed "moderately in favor of issuing a preliminary injunction" because Plaintiff had presented evidence that PLA was about to close without CCCP benefits. (*Id.* at PageID 153–54.) As for the third factor, whether failure to issue an injunction would harm others, Judge Pham found no evidence that others would be harmed by an injunction. (*Id.* at 154.) Lastly, Judge Pham found that the fourth factor, whether an injunction would be in the public interest, weighs both for and against issuing an injunction. (*Id.* at 154–

55.) That is, although families would have access to the PLA, DHS presented evidence that Plaintiff may owe about $86,830.18 in overpayments for abusing the CCCP. (*Id.*) Judge Pham concluded after analyzing the preliminary injunction factors that a preliminary injunction was not warranted. (*Id.* at PageID 155.)

The Court will now detail the applicable legal standard.

## LEGAL STANDARD

A magistrate judge may submit to a district court judge proposed findings of fact and recommendations for deciding pretrial matters. 28 U.S.C. § 636(b)(1)(A)–(B). And "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). If the parties do not object, the district court reviews the R&R for clear error. Fed. R. Civ. P. 72(b) advisory committee notes. But if there is an objection, the district court reviews the "properly" objected-to portions of the R&R de novo. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). And the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

With that in mind, the Court next turns to Plaintiff's objections for de novo review.

## OBJECTIONS

Plaintiff raised nine objections to the R&R and she requests that the Court consider her objections with supplemental evidence.[1] (ECF No. 29.) Plaintiff attached over two hundred

[1] Plaintiff incorrectly numbers her objections. The Court will refer to each objection as they appear in order.

pages of unorganized documents to her objections.[2] (ECF No. 30.) Defendant DHS opposes Plaintiff's objections and urges the Court to deny her request to supplement the record. The Court finds both Plaintiff's objections and her request to supplement without merit.

Plaintiff first objects to Judge Pham's characterization that Plaintiff "'refused to allow' auditors into PLA and 'refused to provide records.'"[3] (ECF No. 29 at PageID 207.) Plaintiff contends that Judge Pham misconstrues the situation because Plaintiff asked to reschedule when the DHS auditors arrived for the October 2 audit, and her October 6 email only objected to audits from people whom she believed "had conflicts or affiliations connected to her complaints." (*Id.*) But as DHS correctly points out, Plaintiff refusal to allow an audit unless DHS met certain conditions, still amounted to a refusal. (ECF No. 30.) The Court finds therefore that Judge Pham did not mischaracterize Plaintiff's refusal to participate in DHS's audit.

Plaintiff's second objection is that Judge Pham did not give enough weight to the short time between Plaintiff's September 18 Facebook post and the October 2 audit attempt. (ECF No. 29 at PageID 207–08.) This is wrong. Judge Pham plainly considered the closeness of Plaintiff's Facebook post to DHS' request for the October 2 audit. (ECF No. 25 at PageID 150 – 51.) But he found that other evidence showed that the audit was unrelated to her post. (*Id.*) This evidence included the September 2025 complaint that Plaintiff was misusing the CCCP benefit

---

[2] The Court will not consider this evidence. *See Goodyear Tire & Rubber Co. v. Conagra Foods, Inc.*, 2:20-cv-6347, 2023 WL 5162655, *12 (S.D. Ohio Aug. 11, 2023) ("[I]t is not the Court's job to parse through hundreds of disorganized pages of documents – a majority of which are either subject to interpretation or downright illegible – without any guidance.")

[3] Plaintiff quotes Ms. Laaser's affidavit, not Judge Pham. Judge Pham exact language is, "As for the decision to terminate PLA from the CCCP, the evidence thus far shows that it was done as a direct result of Hampton's refusal to submit to the October 2 audit, not based on the September 18 Facebook post." (ECF No. 25 at PageID 151.)

program by claiming too many children. The Court thus finds that Judge Pham properly considered the time between Plaintiff's post and the audit request.

Plaintiff also argues that she "has now identified a concrete capacity issue that bears directly on the State's asserted rationale." (ECF No. 29 at PageID 208.) Plaintiff contends that DHS allowed her to have seven children for the first shift, seven children for the second shift, and another five children on either shift. (*Id.*) Plaintiff concludes that this fact casts doubt on whether the September 2025 complaint "rested on accurate State data."[4] (*Id.*) But this is a new argument that was not presented to Judge Pham. The Court will not consider it in ruling on the R&R. *See Meddaugh v. Gateway Financial Service*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022). And even if the Court did consider this argument, Plaintiff's disagreement with DHS over PLA's capacity has no bearing on Plaintiff's retaliation and Fourteenth Amendment claims. Plaintiff also asserts in her third objection that the R&R does not address her capacity argument. (ECF No. 29 at PageID 208.) But, because she failed to present this claim to Judge Pham, this argument is both improper and irrelevant.

Plaintiff's fourth objection is that Judge Pham's "analysis treat[ed] the continued existence of the basic license as resolving all process concerns." (*Id.* at PageID 209.) But this mischaracterizes Judge Pham's ruling and reasoning. He did not rely only on the continued validity of Plaintiff's childcare license. He also found that Plaintiff lacked a property interest in CCCP benefits. (ECF 25 at PageID 152.) Plaintiff's claim that Judge Pham did not fully address Plaintiff's procedural due process argument is therefore false. Plaintiff also argues that the "Termination for Convenience" clause does not "end[] the constitutional inquiry where the State itself identified a specific cause and where Plaintiff alleges that persons implicated in her prior

[4] Plaintiff's argument is not exactly clear. The Court phrased the argument as best it could.

complaints participated in, influenced, or supplied information leading to the adverse action." (ECF No. 29 at PageID 209.) Yet Plaintiff is mixing up her retaliation claim with her procedural due process claim. In the end, these allegations do not show that Judge Pham erred when he found that she lacked a protected property interest in CCCP benefits.

Plaintiff's fifth objection is that Judge Pham improperly relied on the "Termination for Convenience" clause because that clause "should not be treated as immunizing a retaliatory termination from First Amendment review." (ECF No. 29 at PageID 210.) But Judge Pham never found that the "Termination for Convenience" clause immunizes Defendants from Plaintiff's First Amendment claims. Judge Pham's analysis of the "Termination for Convenience" clause addressed only Plaintiff's procedural due process claim. (ECF No. 25 at PageID 151–52.) Plaintiff's fifth objection thus misstates the record.

Plaintiff's next objection is that the Court should consider that she tried to use DHS review and appeals channels and that section 1983 claims do not require exhaustion. (ECF No. 29 at PageID 210.) In short, exhaustion is not at issue here. So this objection is irrelevant.

Plaintiff's seventh objection is that "[t]he Equal Protection analysis should not be resolved against PLA before discovery of comparators and the decision-making record." (*Id.* at PageID 211.) But Judge Pham correctly concluded that, even if Plaintiff "could identify comparator childcare providers, there are no fundamental rights or suspect classes at issue, and []DHS has provided a rational basis for the audit (the September 2025 complaint that the PLA was possibly claiming too many children) and for terminating her from the CCCP (her refusal to

submit to the audit)." (ECF No. 25 at PageID 153.) The Court agrees with Judge Pham's analysis.[5]

Plaintiff's eighth objection is that Judge Pham should have given Plaintiff's irreparable harm finding more weight. (ECF No. 29 at PageID 211.) Plaintiff offers more documentation to show the harm she would suffer if the Court does not grant her Motion for a Preliminary Injunction. (*Id.* at 211–12.) Plaintiff, however, does not explain why she did not offer this evidence at the preliminary injunction hearing. The Court will thus not consider it now and finds that Judge Pham gave proper weight to the irreparable harm factor.[6]

Plaintiff's ninth objection is that Judge Pham should not have treated "the $86,839.18 figure as reliable without the underlying records." (*Id.* at 212.) But this misstates Judge Pham's analysis. Judge Pham found that DHS "presented at least some evidence that [Plaintiff] may have abused the CCCP and may be liable for overpayments of approximately $86,839.18." (ECF No. 25 at PageID 154.) This analysis by no means treats that figure as definite. Judge Pham properly considered the alleged overpayments as just one factor when analyzing the preliminary injunction's impact on the public interest. And even if Judge Pham had found that

[5] Plaintiff asks the Court to not prejudge her Equal Protection claim because she has not yet gained information through "discovery concerning providers with comparable licenses, two-shift/extended-care authorizations, related-child allowances, over-capacity alerts, audits, alleged documentation, and CCCP contract issues." (ECF 29 at PageID 211.) Discovery, however, is generally not permitted before the parties Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). The Court has the discretion under Civil Rule 26(d) to order expedited discovery. *See 5ifth Element Creative, LLC, v. Kirsch*, 2010 WL 4102907, *2 (E.D. Ky. Oct. 18, 2010). "The party seeking the expedited discovery bears the burden of showing good cause for this departure from the usual discovery process." *Id.* Because the Court agrees with Judge Pham that Plaintiff would likely not succeed on the merits of her case, the Court concludes that Plaintiff has not shown good cause for expedited discovery.

[6] The Court is doubtful that any of Plaintiff's supplemental evidence would change the analysis. Judge Pham already considered the fact that PLA is about to close and that closure would affect "the children at the facility and the families who need childcare services." (ECF No. 25 at PageID 154.)

the public interest tilted towards Plaintiff, this factor would not be enough to overcome Plaintiff's failure to show likely success on the merits.

Plaintiff lastly requests the Court's permission to supplement the record with new evidence. (ECF No. 29 at PageID 212.) This proposed evidence includes information about Plaintiff's capacity argument and ongoing harm. (ECF No. 212–13.) As stated above, Plaintiff has not explained why she failed to present this evidence to Judge Pham. As a result, it is improper for the Court to consider it. The Court thus declines to allow Plaintiff to supplement the record with new evidence.

## DISPOSITION

Having reviewed the record, the Court finds Plaintiff's objections lack merit on de novo review and finds no clear error in the rest of Judge Pham's R&R. In fact, the Court agrees with Judge Pham's well-reasoned analysis. And having found no error, the Court therefore **ADOPTS** the R&R. Accordingly, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction.

**SO ORDERED**, this 30th day of September, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE